UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA L. TAKACH.,
    Plaintiff,

v.                              Case No. 8:22-cv-380-KKM-AAS

SHANE BAKER, et al,
    Defendants.
_____

**ORDER**

    Plaintiff Joshua L. Takach, a convicted and sentenced state prisoner, brings claims under 42 U.S.C. § 1983. (Doc. 1.) As required by law, the Court must screen Takach's Complaint. *See* 28 U.S.C. § 1915A (requiring a district court to screen a complaint in "a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and dismiss the complaint if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief"); *see also* 28 U.S.C. § 1915(e)(2) (requiring dismissal of a complaint in an in forma pauperis proceeding under the same circumstances). Because Takach's Complaint fails to state a claim upon which relief may be granted, the Court dismisses it without prejudice to the filing of an amended complaint.

**I.    The Complaint**

    Takach alleges that, on July 19, 2021, he was confined alone in cell E3204 at the Hardee Correctional Institution under administrative confinement status, when Sergeant Taylor and another unnamed officer escorted inmate Brenton

Crabtree to his cell. (Doc. 1 at 8.) Crabtree was under disciplinary confinement status. (*Id*.) Takach and Crabtree are registered rival gang members. (*Id*. at 9.) Takach is a "crip," and Crabtree is a "blood." (*Id*.) Unnamed administrative officials knew that there was personal animosity between Takach and Crabtree and that they had accused each other of being an informant. (*Id*.) Takach has less than eight years remaining on his sentence, and Crabtree is serving a natural life sentence. (*Id*. at 8–9.)

When Crabtree entered Takach's cell, he was handcuffed with his hands in front of his body and was clutching a homemade knife. (*Id*.) The officers noticed the knife in Crabtree's hands and immediately slammed the cell door shut, locking Crabtree inside the cell. (*Id*.) Crabtree brandished the knife and yelled at Takach, "Cracker, I'll kill you. I got a life sentence." (*Id*.) Taylor and the other unnamed officer ordered Crabtree to put down the knife. (*Id*.) Crabtree replied, "Open the door and let me out." (*Id*.)

A stand-off occurred. (*Id*.) Takach faced the cell door, while Crabtree faced away from the cell door. (*Id*.) One of the officers stuck his hand through the open serving portal of the cell door and sprayed mace directly into Takach's face, blinding him. (*Id*. at 9–10.) Crabtree attacked Takach, stabbing him six times in the head, neck, and body. (*Id*. at 10.) The assault stopped when Takach was able to subdue Crabtree and separate from him. (*Id*.) The officers then opened the cell door. (*Id*.)

Takach was taken to Lakeland Trauma Unit for treatment. (*Id*.) He did not receive a shower to remove the chemical agents on his body until that night, hours after the incident. (*Id*.)

Takach filed a grievance about the assault. (*Id*.) The official response to the grievance states, "This incident has been reviewed and all staff involved have been retrained. Your grievance is approved." (*Id*. at 10 and Doc. 1-1 at 1.)

Takach suffered cuts and puncture wounds that required hospitalization, permanent scars and disfigurement, nerve damage, anxiety, post-traumatic stress disorder, and depression. (*Id*. at 12.) He seeks $1,500,000.00 in actual and punitive damages from each defendant. (*Id*. at 11.) Also, he seeks transfer to a federal facility. (*Id*.)

**II.     The Claims**

Takach sues Warden Shane Baker and Chief of Security Colonel Gato of the Hardee Correctional Institution. He alleges that Baker and Gato failed to train their staff on Florida Administrative Codes ("FAC") and Department of Corrections ("DOC") policies and procedures that govern the safety and protection of prisoners. (*Id.* at 5–6.) Takach alleges that their failure to train staff on these security protocols caused the assault and constitutes negligence, deliberate indifference, a failure to protect, and cruel and unusual punishment. (*Id*.)

Similarly, Takach sues Sergeant Taylor, alleging that Taylor and his subordinates failed to comply with FAC and DOC policies and procedures that govern the safety and protection of prisoners. (*Id.* at 5.) He alleges Taylor and his subordinates had a duty to conduct searches and security protocols to control weapons and ensure prisoner safety. (*Id*.) Takach alleges that Taylor's failure to do so constitutes negligence, deliberate indifference, a failure to protect, and cruel and unusual punishment. (*Id*.)

In his Complaint, Takach alleges the following rules, policies, or procedures were violated during the assault on July 19, 2021: (1) a rule that prohibits inmates under disciplinary status to be housed with inmates under administrative confinement status, (2) a DOC compatibility policy that requires officials to assess inmates according to their physical size and length of sentence before housing them together, and (3) a DOC policy that prohibits inmates from being handcuffed with their hands in front of their body. (*Id.* at 8–9.)

### A.   Failure to Train

"[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact." *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quotations and alterations omitted); *see also Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994) (quotations omitted) ("A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains."). "Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program causes his or her employees to violate citizens' constitutional rights, and that armed with that knowledge the supervisor chose to retain that training program." *Keith*, 749 F.3d at 1052 (quotations omitted).

"To establish that [a] supervisor was on actual or constructive notice of the deficiency of training, a pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id*. (quotations omitted). "A plaintiff must also demonstrate that constitutional violations were likely to recur without training." *Am. Fed'n of Labor & Cog. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1189 (11th Cir. 2011).

Here, the asserted facts concerning the failure to train clam are inadequate. Takach fails to allege that the defendants had actual or constructive notice (or how they had that notice) that a deficiency in training concerning the policies and procedures that govern the safety and protection of prisoners caused staff to violate inmates' constitutional rights, that a pattern of similar constitutional violations by untrained employees existed, or that better training would have prevented the assault. Absent factual allegations to support any of the above, the claim for relief based on failure to train must be dismissed.

B.     **Failure to Protect**

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotations omitted). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. (quotations and alterations omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. (quotations omitted).

"An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does

not respond reasonably to the risk." *Id*. (quotations and alterations omitted). To state a failure to protect claim, a plaintiff must allege "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id*. (quotations omitted).

Like the failure to train claim, Takach's factual allegations are insufficient to state a claim for failing to protect him from the harm inflicted by Crabtree. Takach does not allege facts to show that the defendants subjectively knew that Takach faced a substantial risk of serious harm once Crabtree was placed in his cell. Nor does he allege sufficient facts to show that the defendants' conduct was unreasonable and caused the attack. The mere allegations that Takach and Crabtree are members of rival gangs and had personal animosity toward each other—without more—do not make it plausible that the defendants were subjectively aware that a substantial risk of serious harm existed if the two men were in the same cell. "[B]efore [d]efendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [the inmate's] generally problematic nature." *Carter*, 352 F.3d at 1349. "[T]he prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference." *Id*. (quotations omitted). For example here, Takach never alleges that defendants were aware of the knife *before* they placed Crabtree in the cell, only that they saw it at the same time as Takach. (Doc. 1 at 9.)

**C.   Negligence**

To the extent Takach intends to assert a negligence claim against the defendants for failing to train staff on prison safety policies, or for failing to protect

6

him from the harm inflicted by Crabtree, such a claim must be dismissed. The law is well-settled that the Constitution is not implicated by the negligent acts of corrections officials. *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("As we held in *Daniels*, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."); *Keith*, 749 F.3d 1034 ("While there may have been ways in which the [sheriff] could have improved the training of officers, the deliberate indifference standard requires a showing of more than gross negligence."); *Carter*, 352 F.3d at 1350 ("[N]egligent failure to protect an inmate from attack does not justify liability under section 1983.").

### III. Conclusion

Because this is Takach's first Complaint, the Court sua sponte permits him an opportunity to amend. Accordingly, it is **ORDERED** that:

1. Takach's Complaint is **DISMISSED WITHOUT PREJUDICE**.

    a. If Takach wishes to amend his Complaint to remedy the noted deficiencies, he shall file an Amended Complaint no later than **July 5, 2022**.

    b. To amend his Complaint, Takach should complete a new civil rights complaint form, titling it "Amended Complaint." The Amended Complaint must include all of Takach's claims that he wishes to pursue and may not refer back to, or incorporate, the original Complaint. The Amended Complaint shall supersede the original Complaint. *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).

      c.    The Amended Complaint shall be subject to initial screening under 28 U.S.C. § 1915A.

2. If Takach fails to file an Amended Complaint by the above deadline, or fails to seek an extension of time to do so, this order dismissing the Complaint without prejudice will become a final judgment. "[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff [amending his complaint or] seeking an extension. And when the order becomes a final judgment, the district court loses 'all its prejudgment powers to grant any more extensions' of time to amend the complaint." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720–71 (11th Cir. 2020) (quoting *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126 (11th Cir. 1994)).

3. Takach must advise the Court of any change of address. He must entitle the paper "Notice to the Court of Change of Address" and must exclude any motions from the notice. Failure to inform the Court of an address change may result in the dismissal of this case without further notice.

4. The Clerk is **DIRECTED** to mail to Takach a copy of both the standard prisoner civil rights complaint form and this order.

**DONE** and **ORDERED** in Tampa, Florida on June 21, 2022.

*/s/ Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge

9